**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
(Civil Division)**

| | |
|---|---|
| MICHAEL J. CURRAN,<br>693 Peachtree Street NE, Apt. 6C<br>Atlanta, GA 30308<br><br>    Plaintiff,<br><br>v.<br><br>DAVID L. BERNHARDT, Secretary,<br>U.S. Department of the Interior,<br><br>    Defendant. | Civil Action No.: 1:19-cv-2721<br><br>**Jury Demanded** |

**COMPLAINT**

Plaintiff, Michael J. Curran, by and through undersigned counsel, files suit against the named Defendant for the cause of action stated as follows:

**INTRODUCTION**

1. Plaintiff Michael J. Curran ("Plaintiff" or "Mr. Curran") brings this civil action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq*.; and the Civil Rights Act of 1991, 42 U.S.C. § 1981a, for relief from discrimination and a hostile work environment based on his based on his race (Caucasian), sex (Male), and national origin (American).

2. Defendant, David L. Bernhardt ("Defendant" or "Secretary Bernhardt") discriminated against Plaintiff on the basis of his race (Caucasian), sex (Male), and national origin (American), and subjected him to a hostile work environment during the course of

his employment with the Department of the Interior (Office of Appraisal Services) ("the Agency").

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this Complaint pursuant to Title VII, as amended, 42 U.S.C. §§ 2000e-16, 2000e-5(f)(1) and (3). Further, this Court has jurisdiction over this Complaint because there is diversity of the parties and a question of federal law is presented. 28 U.S.C. §§ 1331 (federal question) and 1332 (diversity).

4. Venue properly lies within this Court pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3). Secretary Bernhardt is an officer of the Agency, which is headquartered in the District of Columbia. Secretary Bernhardt performs a significant amount of his official duties in the District of Columbia and resides, for the purposes of venue, within the District of Columbia. *See, e.g., Bartman v. Cheney*, 827 F.Supp. 1 (D.D.C. 1993) (holding that the Secretary of Defense resides in the District of Columbia for the purposes of 28 U.S.C. § 1391).

## PARTIES

5. Plaintiff was at all times during the events of this Complaint a resident of Pennington County, South Dakota and a United States citizen. Plaintiff is currently domiciled at 693 Peachtree Street NE, Apt. 6C, Atlanta, GA 30308. At all relevant times, Plaintiff was an employee of the Defendant.

6. Secretary Bernhardt is being sued in his official capacity as the Secretary for the United States Department of the Interior.

7. Defendant is subject to suit for the negligent, discriminatory, wanton, willful or wrongful acts and/or omissions of employees or agents of Defendant; in addition,

Defendant is the employer of persons who have committed negligent, discriminatory acts and/or omission against Plaintiff within the course and scope of their employment. Therefore, Defendant is liable pursuant to the doctrine of *Respondeat Superior*.

## EXHAUSTION OF REMEDIES

8. Plaintiff has exhausted all of his administrative remedies.

9. On February 26, 2016, Plaintiff timely filed a formal EEO Charge of Discrimination with the Equal Opportunity Employment Commission ("EEOC") for discrimination based on his race (Caucasian), sex (Male), national origin (American) and a hostile work environment for the adverse employment actions alleged herein.

10. On August 7, 2019, an Administrative Law Judge issued a Decision on the Agency's Motion for Summary Judgment, without a hearing, finding that Plaintiff failed to raise any genuine issues of material fact or issues of credibility relevant to the allegations of discrimination.

11. On August 14, 2019, the Agency issued a Final Agency Decision giving the Plaintiff 90 days to file a Federal Civil Action.

12. Plaintiff now timely files this action pursuant to the 29 C.F.R. § 1614.407(a).

## FACTS

13. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

14. On November 17, 2014, Plaintiff was hired by the Agency as a Regional Supervisory Appraiser (RSA), GS-1171-14, for the Great Plains region for the Office of the Special Trustee for American Indians, Office of Appraisal Services in Rapid City, South Dakota. Plaintiff was demoted to Review Appraiser, GS-1171-13, on November 1,

2015, and reassigned from the Great Plains Region in Rapid City, South Dakota to the Western Region in Phoenix, Arizona effective February 21, 2016.

15. During the relevant time period, the Great Plains Region had the largest workload in the Office of Appraisal Services. As a result, as of November 2014, there was a significant backlog of appraisal requests in the Region.

16. When Plaintiff began as the Supervisory Review Appraiser there was only one Review Appraiser assigned to his team - David "Jay" Widdos. Regions with a similar workload as the Great Plains Region had a minimum of four Regional Appraisers during the same timeframe.

17. On December 9, 2014, Plaintiff requested additional staff to assist with the execution of the "Great Plains Workload Plan," a proposal that he drafted to address the backlog in the region.

18. In October of 2015, two additional full-time Review Appraisers were hired, bringing the total number of Review Appraisers in the Great Plains Region to three. However, Plaintiff never had an opportunity to utilize the two newly hired Review Appraisers to address the Great Plains Region backlog prior to being demoted.

19. During the relevant time period, Plaintiff's first-level supervisor was Deborah Lewis, Acting Deputy Director, Office of Appraisal Services (Native American) (Female). Plaintiff's second-level supervisor was Eldred Lesansee, Director, Office of Appraisal Services (Native American) (Male).

20. From March 2015 through October 2015, Ms. Lewis treated Plaintiff differently than the other similarly situated RSAs at the Agency by frequently approaching employees on Plaintiff's staff and saying negative things about Plaintiff, and by displaying contentious

4

and unprofessional behavior towards him. These actions undermined and usurped Plaintiff's leadership, thereby causing a hostile work environment for the Plaintiff.

21. From March 2015 through September 2015, Ms. Lewis would not allow Plaintiff to contact his fellow RSAs in order to coordinate assistance with the backlog of appraisal requests for the Great Plains Region.

22. From March 5, 2015 through March 10, 2015, Ms. Lewis refused to collaborate with Plaintiff or share information she was going to co-present with Plaintiff at the Great Plains Region Superintendent's Meeting held on March 10, 2015.

23. On March 10, 2015, Ms. Lewis asked Plaintiff where he was from. When Plaintiff responded that he was from the south, Florida specifically, Ms. Lewis then asked Plaintiff if he wore boots, Wranglers and drove a pick-up truck.  This made Plaintiff feel like he was being profiled and/or stereotype as a bigot by Ms. Lewis.  Ms. Lewis then stated that she was a Mormon and had a very bad experience in northern Florida while on a mission trip. She continued speaking about this experience and said she was chased by some Christian people who did not like Mormons. This made Plaintiff very uncomfortable as he felt as though she was insinuating he was intolerant of her religious practices and that she did not understand or respect his.

24. On March 11, 2015, while at the Great Plains Region Office in Rapid City, South Dakota, Ms. Lewis, as Plaintiff's immediate supervisor, refused to meet with Plaintiff privately to discuss any ongoing regional issues.

25. On March 11, 2015, Ms. Lewis made comments to Katherine Filesteel-LeBeau (Native American) (Female), Great Plains Appraisal Program Specialist, who is enrolled at the Fort Belknap Indian Reservation in Montana and resides at Cheyenne River Indian

Reservation, that caused her to believe that Ms. Lewis did not like or respect Plaintiff because of his race and national origin. Further, Ms. Lewis erroneously told Mrs. Filesteel-LeBeau that Plaintiff believed she was not ready to take the primary courses to become a real estate appraiser (Principles, Procedures and 15-USPAP). This was untrue because Plaintiff was already encouraging, working with, and training Mrs. Filesteel-LeBeau on appraisal topics and techniques.

26. On March 11, 2015, Ms. Lewis also instructed Mrs. Filesteel-LeBeau not to invite Plaintiff to a meeting scheduled to take place in Plaintiff's conference room regarding important operational matters and procedures.

27. On March 18, 2015 and March 20, 2015, Plaintiff informed Director Lesansee, via email and telephone, about the harassment and hostile work environment he was experiencing, but Plaintiff is not aware of any action taken by Director Lesansee to correct Ms. Lewis' contentious and unprofessional behavior towards him.

28. On March 24, 2015, Plaintiff sent an email to Director Lesansee and Brian Bloch in the Office of the Special Trustee Ombudsman, expressing his concerns with Ms. Lewis' behavior towards him and the Great Plains Region staff. However, Plaintiff is not aware of any action taken by Director Lesansee or Mr. Bloch to correct Ms. Lewis' behavior towards him. Ms. Lewis continued to be unpleasant, unprofessional and the situation deteriorated further.

29. On April 15-17, 2015, while at the Great Plains Region Office in Rapid City, South Dakota, Ms. Lewis, as Plaintiff's immediate supervisor, refused to meet with Plaintiff privately to discuss any ongoing regional issues.

30. On June 30, 2015, Ms. Lewis met with Lee Ann Beardt, Rosebud Bureau of Indian Affairs (BIA) Superintendent, and the Realty Staff to discuss their appraisal requests/workload. Again, Plaintiff was not invited to this meeting in person or via telephone, which impacted his working relationship with the Rosebud BIA Staff.

31. On July 2, 2015, Ms. Lewis sent an email to Ms. Beardt and the Realty Staff committing Plaintiff to tasks without consulting with him. That same day, Plaintiff sent an email to Ms. Lewis, copying Director Lesansee and Mr. Alex Glade, Acting Deputy Director, asking Ms. Lewis to refrain from contacting the Great Plains Superintendents and Realty Staff to have private conversations and meetings without consulting with the Plaintiff.

32. On July 2, 2015, Ms. Lewis visited the BIA Pine Ridge Agency and again met with members of the Realty Staff without Plaintiff present. Ms. Lewis then reported to Director Lesansee that Patty Yellow Boy, Realty Officer at BIA Pine Ridge, was upset with Plaintiff; however, Director Lesansee never contacted Plaintiff to clarify this allegation.

33. On July 2, 2015, Ms. Lewis would not allow Plaintiff to drive her to the airport after her visit to Rapid City. Ms. Lewis insisted that a specific female staff member, Wanda Haller (Native American) (Female), take her to the airport instead of Plaintiff. Ms. Haller came back to the office and informed the Plaintiff that Ms. Lewis asked her several questions about Plaintiff during the trip to the airport.

34. On July 28, 2015, Ms. Lewis visited the BIA Winnebago Agency and met with members of the Realty Staff including Crystal Ross, Realty Specialist, and LaVerne Parker, Realty Specialist, and erroneously reported to Director Lesansee that these individuals were upset with Plaintiff.

35. On September 16, 2015, Steven Bottemiller (Caucasian) (Male) (American), the new Deputy Director, informed Plaintiff that he was disinvited to the RSA Meeting scheduled for the following week in Denver, Colorado, by Director Lesansee even though he had relevant information to contribute to the meeting. This was extremely embarrassing to Plaintiff since he had to cancel his travel arrangements and his plans to meet with his fellow RSAs.

36. On September 16, 2015, Deputy Director Bottemiller informed Plaintiff that Ms. Lewis would be the Rating Official for his Fiscal Year 2015 EPAP. Plaintiff immediately informed Deputy Director Bottemiller that he was uncomfortable with that assignment because of the difficulties he continued to experience with Ms. Lewis.

37. On October 30, 2015, Ms. Lewis performed Plaintiff's Performance Appraisal Rating for Fiscal Year 2015 and issued him a rating of "Minimally Successful" on Critical Element #2 and Critical Element #5. This caused Plaintiff's entire rating for his FY 2015 EPAP to be "Minimally Successful". Director Lesansee, who was the Reviewing Official, agreed with Ms. Lewis' ratings and signed his FY 2015 EPAP.

38. On November 1, 2015, Deputy Director Bottemiller demoted Plaintiff from Supervisory Review Appraiser, GS-1171-14, to Review Appraiser, GS-1171-13.

39. On November 6, 2015, Plaintiff participated in an Informal Discussion via telephone with Ms. Lewis regarding his FY 2015 EPAP as part of the reconsideration process. However, during the phone call Ms. Lewis was unprofessional and became combative with Plaintiff when he tried to explain his rebuttal points. Ms. Lewis continually interrupted Plaintiff throughout the discussion and as a result, only changed of one of the Critical Elements (#4) from "Fully Successful" to "Superior". The two Critical Elements

(#2 and #5) with a rating of "Minimally Successful" were not changed causing Plaintiff's overall rating to remain "Minimally Successful".

40. On December 10, 2015, Deputy Director Mr. Bottemiller issued Plaintiff a Notice of Directed Reassignment from Rapid City, South Dakota to Phoenix, Arizona.

41. On December 15, 2015, Plaintiff received an email from the Reconsideration Official, Harvey Gates, Director, Office of Risk Management, Office of the Special Trustee for American Indians, changing Critical Elements #2 and #5 to "Fully Successful" via the Formal Reconsideration Process, which changed Plaintiff's overall rating for FY 2015 to "Fully Successful".

42. On December 21, 2015, Deputy Director Bottemiller and Director Lesansee denied Plaintiff's request to reconsider their decision to remove him as the Great Plains RSA and Plaintiff's demotion from GS-14 to GS-13.

## CAUSES OF ACTION

### COUNT ONE
### Title VII of the Civil Rights Act of 1964, as amended,
### 42 U.S.C. § 2000e, *et seq*.
### (Employment Discrimination on the Basis of Race)

39. Plaintiff is Caucasian and, as such, is a member of a protected class.

40. As an employee of Defendant, Plaintiff was treated differently and subjected to disparate and harassing treatment in comparison to non-Caucasian employees that Defendant employed.

41. Defendant has subjected Plaintiff to adverse employment actions, including his removal from the position of Great Plains RSA and his demotion from GS-14 to GS-13, and otherwise deprived Plaintiff of his rights as enjoyed by his non-Caucasian coworkers.

42. Defendant's unlawful conduct negatively impacted the terms, conditions and privileges of Plaintiff's employment because it resulted in loss of benefits, promotional opportunities and other disadvantages in the workplace.

43. The reason(s) proffered for Defendant's unlawful conduct, including that the adverse actions taken against Plaintiff were a result of Plaintiff's failure to correctly input requests into OASIS; his inability to reduce the request backlog for the Great Plains Region; and his alleged discourteous behavior toward Director Lesansee during a conference call, are not legitimate and would be pretext for its discriminatory conduct.

44. Defendant knew at all times during the events described throughout this Complaint that Plaintiff is Caucasian.

45. Plaintiff has been treated differently and subjected to different terms and conditions of his employment due to his race (Caucasian).

46. Defendant has limited Plaintiff in a way that deprives him of employment opportunities, workplace benefits and otherwise adversely affects his status as an employee because of his race (Caucasian).

47. Other employees who were similarly situated but are members of a different protected class than Plaintiff, have been treated more favorably than Plaintiff in the terms and conditions of employment.

48. Defendant's conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of his race (Caucasian).

49. As a direct and proximate cause of Defendant's conduct alleged in this Complaint, Plaintiff suffered, and continues to suffer, from harm, injury and monetary damages –

including but not limited to past and future loss of income, benefits, career opportunities, expenses and costs – and is entitled to all available legal and equitable remedies.

50. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and his injury is permanent in nature. Defendant's treatment and actions are ongoing.

51. Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court;

a. Restore Plaintiff to a GS-14, step 2, with applicable backpay, benefits, interest;

b. Provide Plaintiff with a clean record of any adverse/negative personnel actions/records, including all adverse/negative EPAP appraisal(s), and substitute accurate Agency records on the Plaintiff;

c. Provide Plaintiff with a choice of Duty Station to include a virtual position;

d. Enroll Plaintiff in a Senior Executive Service (SES) training program;

e. Pay Plaintiff past pecuniary compensatory damages in their proven amount;

f. Pay Plaintiff future pecuniary and nonpecuniary compensatory damages in a proven amount not to exceed $300,000;

g. Pay Plaintiff's reasonable attorneys' fees; and

h. Award such other and further relief as this Honorable Court deems just and proper.

**COUNT TWO**
**Title VII of the Civil Rights Act of 1964, as amended,**
**42 U.S.C. § 2000e, *et seq*.**
**(Employment Discrimination on the Basis of Sex)**

11

52. Plaintiff is male and, as such, is a member of a protected class.

53. As an employee of Defendant, Plaintiff was treated differently and subjected to disparate and harassing treatment in comparison to non-male employees that Defendant employed.

54. Defendant has subjected Plaintiff to adverse employment actions, including his removal from the position of Great Plains RSA and his demotion from GS-14 to GS-13, and otherwise deprived Plaintiff of his rights as enjoyed by his non-male coworkers.

55. Defendant's unlawful conduct negatively impacted the terms, conditions and privileges of Plaintiff's employment because it resulted in loss of benefits, promotional opportunities and other disadvantages in the workplace.

56. The reason(s) proffered for Defendant's unlawful conduct, including that the adverse actions taken against Plaintiff were a result of Plaintiff's failure to correctly input requests into OASIS; his inability to reduce the request backlog for the Great Plains Region; and his alleged discourteous behavior toward Director Lesansee during a conference call, are not legitimate and would be pretext for its discriminatory conduct.

57. Defendant knew at all times during the events described throughout this Complaint that Plaintiff is male.

58. Plaintiff has been treated differently and subjected to different terms and conditions of his employment due to his sex (Male).

59. Defendant has limited Plaintiff in a way that deprives him of employment opportunities, workplace benefits and otherwise adversely affects his status as an employee because of his sex (Male).

60. Other employees who were similarly situated but are members of a different protected class than Plaintiff, have been treated more favorably than Plaintiff in the terms and conditions of employment.

61. Defendant's conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of his sex (Male).

62. As a direct and proximate cause of Defendant's conduct alleged in this Complaint, Plaintiff suffered, and continues to suffer, from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, career opportunities, expenses and costs – and is entitled to all available legal and equitable remedies.

63. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and his injury is permanent in nature. Defendant's treatment and actions are ongoing.

64. Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court;

a. Restore Plaintiff to a GS-14, step 2, with applicable backpay, benefits, interest;

b. Provide Plaintiff with a clean record of any adverse/negative personnel actions/records, including all adverse/negative EPAP appraisal(s), and substitute accurate Agency records on the Plaintiff;

c. Provide Plaintiff with a choice of Duty Station to include a virtual position;

d. Enroll Plaintiff in a Senior Executive Service (SES) training program;

e. Pay Plaintiff past pecuniary compensatory damages in their proven amount;

  f. Pay Plaintiff future pecuniary and nonpecuniary compensatory damages in a proven amount not to exceed $300,000;

  g. Pay Plaintiff's reasonable attorneys' fees; and

  h. Award such other and further relief as this Honorable Court deems just and proper.

## COUNT THREE
### Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.
### (Employment Discrimination on the Basis of National Origin)

65. Plaintiff is American and, as such, is a member of a protected class.

66. As an employee of Defendant, Plaintiff was treated differently and subjected to disparate and harassing treatment in comparison to non-American employees that Defendant employed.

67. Defendant has subjected Plaintiff to adverse employment actions, including his removal from the position of Great Plains RSA and his demotion from GS-14 to GS-13, and otherwise deprived Plaintiff of his rights as enjoyed by his non-American coworkers.

68. Defendant's unlawful conduct negatively impacted the terms, conditions and privileges of Plaintiff's employment because it resulted in loss of benefits, promotional opportunities and other disadvantages in the workplace.

69. The reason(s) proffered for Defendant's unlawful conduct, including that the adverse actions taken against Plaintiff were a result of Plaintiff's failure to correctly input requests into OASIS; his inability to reduce the request backlog for the Great Plains Region; and his alleged discourteous behavior toward Director Lesansee during a conference call, are not legitimate and would be pretext for its discriminatory conduct.

70. Defendant knew at all times during the events described throughout this Complaint that Plaintiff is American.

71. Plaintiff has been treated differently and subjected to different terms and conditions of his employment due to his national origin (American).

72. Defendant has limited Plaintiff in a way that deprives him of employment opportunities, workplace benefits and otherwise adversely affects his status as an employee because of his national origin (American).

73. Other employees who were similarly situated but are members of a different protected class than Plaintiff, have been treated more favorably than Plaintiff in the terms and conditions of employment.

74. Defendant's conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of his national origin (American).

75. As a direct and proximate cause of Defendant's conduct alleged in this Complaint, Plaintiff suffered, and continues to suffer, from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, career opportunities, expenses and costs – and is entitled to all available legal and equitable remedies.

76. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and his injury is permanent in nature. Defendant's treatment and actions are ongoing.

77. Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

    **WHEREFORE**, Plaintiff respectfully prays that this Honorable Court;

    a. Restore Plaintiff to a GS-14, step 2, with applicable backpay, benefits, interest;

    b. Provide Plaintiff with a clean record of any adverse/negative personnel actions/records, including all adverse/negative EPAP appraisal(s), and substitute accurate Agency records on the Plaintiff;

    c. Provide Plaintiff with a choice of Duty Station to include a virtual position;

    d. Enroll Plaintiff in a Senior Executive Service (SES) training program;

    e. Pay Plaintiff past pecuniary compensatory damages in their proven amount;

    f. Pay Plaintiff future pecuniary and nonpecuniary compensatory damages in a proven amount not to exceed $300,000;

    g. Pay Plaintiff's reasonable attorneys' fees; and

    h. Award such other and further relief as this Honorable Court deems just and proper.

**COUNT FOUR**
**Title VII of the Civil Rights Act of 1964, as amended,**
**42 U.S.C. § 2000e, *et seq*.**
**(Hostile Work Environment)**

78. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

79. As a result of Plaintiff's protected status, Plaintiff's supervisors routinely engaged in a persistent pattern of severe and pervasive harassment as set forth herein, which created a hostile and offensive workplace environment.

80. Plaintiff was regularly and continually subjected to harassing conduct that included being disrespected by his supervisors, being subjected to false accusations, being stigmatized, and ultimately removed from his Supervisory position, which created a hostile and abusive work environment.

81. Plaintiff believes that he was subjected to a hostile work environment based on his race (Caucasian), sex (Male) and national origin (American).

82. Defendant's unlawful conduct was unwelcome.

83. Defendant's deliberate conduct of the adverse actions referred to throughout this Complaint created a hostile and abusive work environment.

84. Plaintiff was subjected to harassment because of his protected status, and it unreasonably interfered and affected a term, condition, or privilege of Plaintiff's employment.

85. Defendant knew or should have known of the harassment. Defendant failed to adequately investigate the harassment and took no effective, immediate or remedial action. Despite Plaintiff's complaints, the harassment continued unabated and, despite being repeatedly detailed, was forced to continue reporting to his harasser.

86. By failing to take appropriate and effective remedial action against Plaintiff's supervisors, Defendant acted with malice or with reckless or callous indifference to Plaintiff's complaints.

87. As a direct and proximate cause of Defendant's conduct alleged in this Complaint, Plaintiff suffered, and continues for suffer, from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, career opportunities, expenses and costs – and is entitled to all available legal and equitable remedies.

88. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and his injury is permanent in nature. Defendant's treatment and actions were ongoing.

89. Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

    **WHEREFORE**, Plaintiff respectfully prays that this Honorable Court;

    a. Restore Plaintiff to a GS-14, step 2, with applicable backpay, benefits, interest;

    b. Provide Plaintiff with a clean record of any adverse/negative personnel actions/records, including all adverse/negative EPAP appraisal(s), and substitute accurate Agency records on the Plaintiff;

    c. Provide Plaintiff with a choice of Duty Station to include a virtual position;

    d. Enroll Plaintiff in a Senior Executive Service (SES) training program;

    e. Pay Plaintiff past pecuniary compensatory damages in their proven amount;

    f. Pay Plaintiff future pecuniary and nonpecuniary compensatory damages in a proven amount not to exceed $300,000;

    g. Pay Plaintiff's reasonable attorneys' fees; and

    h. Award such other and further relief as this Honorable Court deems just and proper.

## EQUITABLE RELIEF

90. Plaintiff hereby incorporates by reference hereto, the facts, law, and/or allegations contained within the preceding paragraphs, as fully set forth herein.

91. Because of the actions alleged herein, the continued employment of the supervisors at issue herein without training in equal employment opportunity law, rules and regulations, present a clear and present danger to the employees of Defendant and could

result in further illegal actions on the part of Defendant, by and through their respective agents, servants and employees.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a. Order Defendant to institute a policy and procedure to be implemented against discrimination;

b. Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

c. Supervisory training for the supervisors at issue herein; and

d. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

92. Pursuant to Fed. R. Civ. P. 38, Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

*A. Marques Pitre, Esq.*

_____
A. Marques Pitre, Esq.
(D.C. Bar No. 503119)
Pitre & Associates, LLC
Ronald Reagan Building and International Trade Center
1300 Pennsylvania Avenue, N.W., Suite 700
Washington, DC 20004
Phone: 202-204-3006
Direct: 202-840-6797
Email: ampitre@ampitreassociates.com

*Counsel for Plaintiff*